Third Division

   Filed: January 14, 2004

No. 1-01-1120

THE PEOPLE OF THE STATE OF ILLINOIS, )    Appeal from the 

)    Circuit Court of 

Plaintiff-Appellee, )    Cook County.

)

)    

    )

LONG NHU LE, )    Honorable 

)    Marcus R. Salone,

Defendant-Appellant. )    Judge Presiding.

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court: 

Following a bench trial, the defendant, Long Nhu Le, was convicted of criminal sexual assault and sentenced to a prison term of six years.  On appeal, the defendant contends that: (1) his due process rights were violated when the trial court failed to allow an expert of his own choosing to examine the victim to determine whether she suffered from post-traumatic stress syndrome; and (2) the State failed to prove him guilty beyond a reasonable doubt.  
For the reasons which follow, we affirm.   

Prior to trial, the defendant was notified that the State intended to present expert testimony that the victim, Fausta V. (F.V.), suffered from post-traumatic stress syndrome.  In response, the defendant filed a motion for the appointment of an expert, wherein he alleged that he was indigent and seeking the services of a psychiatrist to examine F.V. as to the issue of post-traumatic stress syndrome.  The trial court granted the defendant's motion and appointed a psychologist from the Psychiatric Institute of the Circuit Court of Cook County (hereinafter "Forensic Services Clinic") to examine F.V.  Following the examination, defense counsel argued that the psychologist had failed to follow certain protocol with respect to a psychological test performed on F.V., and had also improperly communicated with the State.  To remedy the situation, the trial court appointed a second psychologist from the Forensic Services Clinic to examine F.V.   

The State presented the following evidence at trial.

F.V. testified that, in January 1997, she was working as a cleaning person at an office building located in downtown Chicago.  F.V. stated that the defendant worked as a security guard in the same building.  According to F.V., on January 18, 1997, she was working the night shift and had encountered the defendant on numerous occasions that evening.  At approximately 11:40 p.m., the defendant asked her if she had finished cleaning the 43
rd
 floor.  F.V. replied “no”, and proceeded up to the 43
rd
 floor.  The defendant left to respond to a call on his radio. 

F.V. testified that she was vacuuming on the 43
rd
 floor when she suddenly saw the defendant, who grabbed her by the hair and pushed her into an office.  F.V. stated that she yelled “no, Lee”, and attempted to get away from him, but was unable to do so because he was "very aggressive".  According to F.V., the defendant closed the office door and pinned her up against a wall.  The defendant then placed his hands over F.V.'s breast and started kissing her.  During this time, F.V. continued to tell the defendant "no" and attempted to get him off of her.  F.V. stated that the defendant tore her bra as the two of them struggled.  The defendant then attempted to push F.V. onto a nearby desk.  F.V., however, continued resisting and telling the defendant “no”.  F.V. stated that the defendant pushed her and eventually threw her onto the floor.  

According to F.V., while on the floor, the defendant got on top of her and attempted to take her pants off.  F.V. again attempted to escape from the defendant's grasp, but to no avail.  The defendant then rolled F.V.’s pants down to her ankles and had sexual intercourse with her.  She testified that, when the defendant was finished, he got off of her, and said that he was “sorry” and that he loved her.  F.V. stated that she ran out of the office toward the elevator.  Shortly thereafter, the elevator arrived and her boss, Zenon Zandecki, who was standing inside, asked her what had happened.  She first waited for the defendant to leave the floor and then told Zandecki that the defendant pulled her by the hair into a vacant office and then had sex with her.  F.V. stated that she also spoke to Eric Riggins, the security supervisor, about the incident.  F.V. was subsequently taken to the hospital, where she submitted to a physical examination.  

F.V. was questioned at length about her interactions with the defendant prior to the incident.  F.V. described an incident which occurred approximately eight months earlier when the defendant grabbed and kissed her at work.  F.V. further testified that the defendant had kissed her on another occasion while giving her a ride home.                                 

Zandecki testified that, around midnight, he went up to the 43
rd
 floor and saw F.V. waiting for the elevator.  According to Zandecki, F.V. stated that she needed to talk to him.  He stated that she appeared nervous and afraid, and her hands were “shaking” at the time.  F.V. asked Zandecki for an assurance that he was not going to fire her.  She then told Zandecki that the defendant grabbed her by the hair, forced her into a vacant office, and had sexual intercourse with her.  Zandecki testified that he directed her to go to the 38
th
 floor and wait for him.  During this time, Zandecki reported the incident to Riggins.  Zandecki testified that the police later arrived at the scene.  According to Zandecki, F.V. appeared to be crying as she was talking to one of the policemen.  

On cross-examination, Zandecki admitted that, a few years earlier, F.V. had received two complaints about her job performance.  Zandecki also testified that, three years prior to the incident, F.V. was on probation for absenteeism.  He stated, however, that F.V. was not on probation when the incident took place.  Finally, Zandecki acknowledged that an employee could be disciplined for having sexual relations at the workplace.    

Riggins testified that he spoke to Zandecki about the incident and then went 
to talk to F.V.  
Riggins stated that F.V. looked "nervous, distraught, [and] upset" and appeared to be crying.  F.V. showed Riggins a bruise she had sustained on her breast.  On cross-examination, Riggins acknowledged that he did not know what caused the bruise.  Riggins stated that, when he observed the bruise, he also noticed that one of F.V.'s bra straps was detached.  He also observed a small scratch on F.V.'s hand.  Riggins testified that when F.V. was talking to the police about the incident, she appeared nervous and her lips were “trembling”.   

The State presented the testimony of Dr. Andioco Barron, who was qualified as an expert in the field of psychiatry.  Dr. Barron testified that he first examined F.V. on February 11, 1997.  Dr. Barron stated that F.V. was having anxiety, depression, and nightmares after the incident.  Based upon a reasonable degree of medical and psychiatric certainty, Dr. Barron opined that F.V. was suffering  from  post-traumatic stress syndrome.  On cross-examination, Dr. Barron admitted that his opinion was based upon his personal observations of F.V., and not on her prior medical records.  He also acknowledged that he did not know if F.V. suffered from any symptoms of depression before the incident.  Finally, Dr. Barron testified that he did not have F.V. complete any tests to determine whether she was “malingering.”  

The State rested, and the defendant testified on his own behalf.  His account of what transpired on January 18, 1997, differed significantly from F.V.’s version of events.  According to the defendant, around 11:30 p.m., he went up to the 43
rd
 floor to help F.V. turn off the lights.  The defendant stated that F.V. was cleaning an office at the time.  He began massaging her back, as he had done in the past.  According to the defendant, "one thing led ***
 to another" and the two of them began kissing and holding each other.  The defendant testified that F.V. opened his zipper and began massaging his penis, as he massaged her breast.  The defendant stated that F.V. then pulled him down on top of her, pulled down her pants, and initiated sexual intercourse with him.  After they finished, F.V. put her pants back on and left the office.  

The defendant denied using any force against F.V. or threatening her in any way.  He also denied ripping her bra.  The defendant stated that F.V. never said “no” during the incident or stated that she did not want to have sex with him.  Finally, the defendant testified that he and F.V. had sexual intercourse once before the incident.  Following the defendant's testimony, defense counsel rested.     

The trial court found the defendant guilty of criminal sexual assault.  In so doing, the court specifically found F.V.'s testimony to be "clear, unequivocal, without motivation, and unimpeached in any significant way".  The court further found that F.V.'s testimony was corroborated by the testimony of Zandecki, Riggins, and Dr. Barron. 

Thereafter, the defendant filed a motion for a new trial, arguing, 
inter
 
alia
, that the trial court's failure to appoint a private expert on his behalf deprived him of due process of the law, as he was forced to use psychologists employed by the Forensic Clinical Services who did not meet the same standard of psychologists available in the private field.  The trial court denied his motion.  The defendant was subsequently sentenced to a prison term of six years.  He now appeals. 

The defendant first contends that his due process rights were violated in that the trial court "failed to allow him to obtain an expert witness of his own choosing" for the purpose of assessing whether F.V. suffered from post-traumatic stress syndrome.  The defendant asserts that the trial court appointed psychologists employed by the Forensic Clinical Services, both of whom provided substandard services.  He maintains that, because Dr. Barron's testimony regarding post-traumatic stress syndrome was the "deciding factor" in his conviction, the only way to rebut his testimony was by having the services of an "independent, qualified expert."  

Section 115-7.2 of the Code provides that "[i]n a prosecution for an illegal sexual act perpetrated upon a victim, *** testimony by an expert, qualified by the court relating to any recognized and accepted form on post-traumatic stress syndrome shall be admissible as evidence."  725 ILCS 5/115-7.2 (West 2000).  In 
People v. Wheeler
, 151 Ill. 2d 298, 602 N.E.2d 826 (1992), our supreme court held that the State may admit an examining expert's testimony that the victim suffered post-traumatic stress syndrome only if the victim consents to an examination by the defendant's expert.  Our supreme court’s holding is geared toward protecting a defendant's right to a fundamentally fair trial which includes the right to present witnesses on his own behalf.  
Wheeler
, 151 Ill. 2d at 305.  

The record shows that, prior to trial, the State indicated that it was intending to present expert testimony that F.V. suffered from post-traumatic stress syndrome.  In response, the defendant filed a motion for the appointment of an expert, wherein he alleged that he was indigent and was seeking the "services of a psychiatrist to offer an opinion on post-traumatic stress of [the] complaining witness."  

At the May 6, 1999, hearing held on the defendant’s motion, the parties expressed their understanding of the court’s holding in 
Wheeler
, that the State may only present testimony of post-traumatic stress syndrome if the defendant is allowed to have an expert examine the victim.  After the State indicated that such evidence was crucial to its case, the trial court appointed a professional from the Forensic Clinical Services to evaluate F.V. for any symptoms of post-traumatic stress syndrome.  The court ordered defense counsel to draft an order to that effect, and the matter was continued to May 11, 1999.  Following a hearing on that date, the trial court entered a written order granting the defendant’s motion for the appointment of an expert. 

Pursuant to the trial court’s order, Dr. Paul Fauteck, a licensed clinical psychologist from the Forensic Clinical Services examined F.V., and opined that she was suffering from symptoms that were consistent with post-traumatic stress syndrome.  On August 26, 1999, defense counsel argued to the court that Dr. Fauteck could not be presented as an expert in the defendant's case because he failed to follow certain protocols with respect to an “MMPI” test completed by F.V.  According to defense counsel, Dr. Fauteck allowed F.V. to take the test papers outside of the building where it was being administered.  Defense counsel further argued that Dr. Fauteck had improperly communicated with the State before the test was administered.  In response, the trial court ordered Dr. Stafford Henry from the Forensic Clinical Services to perform a second evaluation on F.V.       

Before the defendant testified in his case, a hearing was held on November 28, 2000, with respect to Dr. Henry’s examination of F.V.  Defense counsel first noted that the court file containing the court orders with respect to Dr. Henry was missing.  Defense counsel attempted to recount the procedural posture of the case and stated the following: 

“The history of this matter is that Dr. Henry was appointed as a consultant to the defense.  When you denied our motion for an independent person who the Court would pay, due to the indigency of the defendant.  The Court’s compromise was that the psychiatric division of the court would be used to make a determination in connection with a witness concerning the question of post[-]traumatic stress syndrome concerning the witness.”  

Defense counsel argued that, after reviewing Dr. Henry’s report, he decided not to add him to the witness list.  Accordingly, defense counsel argued that the State should not be allowed to use Dr. Henry’s report in its case.  Defense counsel made an oral motion 
in limine
 to bar the State from presenting the testimony of Dr. Henry, which the trial court granted.  

Having set forth the facts surrounding the defendant’s claim of error, we must next address the State’s argument that the record on appeal does not support the defendant’s argument that the trial court denied his request for an expert of his own choosing.  We first note that the defendant has failed to include in the record on appeal the transcripts from the May 6, 1999, and May 11, 1999, hearings held on his motion for the appointment of an expert.  The State, however, has attached these transcripts to its brief before this court. There is no indication in these transcripts or in the court's May 11, 1999, order granting the defendant’s motion for expert services, that the court denied the defendant the opportunity to choose a particular expert or that he sought a specific expert rather than merely requesting the appointment of one.  In arguing that the trial court denied his request for the appointment of an expert of his own choosing, the defendant points to the November 28, 2000, transcript of proceedings wherein defense counsel reminded the court of the circumstances surrounding Dr. Henry's appointment.  Defense counsel stated that the court had "previously denied our motion for an independent person who the Court would pay [for], due to the indigency of the defendant."  Other than defense counsel's representation of the facts, the record on appeal contains no indication that the defendant actually requested a specific expert of his own choosing to examine F.V. with respect to post-traumatic stress syndrome.

As the appellant, the defendant has the burden to present a sufficiently complete record to support a claim of error, and any doubts that arise from the incompleteness of the record will be resolved against the defendant.  
Foutch v. O'Bryant
, 99 Ill. 2d 389, 391-92, 459 N.E.2d 958 (1984); 
People v. Fair
, 193 Ill. 2d 256, 264, 738 N.E.2d 500 (2000).  Based on the record before us, the defendant has failed to support his assertion that he requested an expert of his own choosing and that the trial court denied his request.  To the contrary, we note that the transcript of the May 6, 1999, hearing shows that, when the trial court decided to appoint a County-employed psychiatrist to evaluate F.V., defense counsel expressed his agreement by stating:

"[I]f the Court is more comfortable with the Psychiatric Institute, if the court feels that that would be the best way to go, you know, I am willing to do anything to make sure there is a level playing field.  If the Court has any psychiatrist or doctor in mind, then that should be the Court – who the Court should have to do it, because then [
sic
] court is sure, one, that it will be done the way the Court wants it done; and a report will be made to your Honor."    

Even assuming 
arguendo
 that the trial court had in fact denied the defendant's request for an expert of his own choosing, we would still find no error.  In 
Ake v. Oklahoma
, 470 U.S. 68, 105 S. Ct. 1087, 84 L. Ed. 2d 53 (1985), the Supreme Court held that, when an indigent defendant's sanity at the time of the offense is likely to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in the evaluation, preparation, and presentation of the defense.  However, the Court was careful to qualify its holding by stating:  "This is not to say, of course, that the indigent defendant has a constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own.  Our concern is that the indigent defendant have access to a competent psychiatrist ***."  
Ake
, 470 U.S. at 83.  We believe that the Supreme Court's reasoning in 
Ake
 is equally applicable to the facts in this case.  

We next address the defendant's argument that he was denied a fair trial because both of the appointed psychologists rendered substandard services which prevented him from rebutting the testimony of the State's expert at trial.  

The record shows that defense counsel complained that Dr. Fauteck rendered incompetent services because he improperly communicated with the State and allowed F.V. to take certain test papers outside of the building where it was being administered.  The trial court remedied defense counsel's complaint by appointing Dr. Henry to do a second evaluation of F.V.  The defendant maintains that Dr. Henry's services were similarly substandard because he gave the State a copy of his report without prior approval or knowledge by the defense.    

The defendant's argument is based upon the report of proceedings from the November 28, 2000, hearing.  Defense counsel argued at the hearing that Dr. Henry was appointed to examine F.V. for the purpose of determining whether the defense was going to offer evidence at trial to rebut the State’s evidence as to post-traumatic stress syndrome.  Defense counsel asserted that, after reviewing Dr. Henry’s report, he decided not to add him to the witness list, and stated that Dr. Henry remained in the “consulting capacity” only.  Defense counsel argued that, although the State had received Dr. Henry's report with respect to F.V., it should not be allowed to use it because defense counsel decided not to call Dr. Henry to testify at trial. 

We find the defendant's citation to the November 28, 2000, hearing in support of his argument that Dr. Henry rendered ineffective services by providing the State with a copy of his report to be rather disingenuous.   The only purpose of the hearing was for defense counsel to make a motion
 in limine
 to bar the State from presenting the testimony of Dr. Henry, which the trial court granted.  At no time during the hearing did defense counsel indicate to the court that Dr. Henry's services were somehow inadequate.  In fact, the record shows that, in making his argument with respect to Dr. Henry's consultation report, defense counsel clarified, “my objection is not that he is not an excellent doctor or qualified psychiatrist.”  Based on the record before us, we are unpersuaded by the defendant's argument as to the effectiveness of Dr. Henry's services.  

The defendant next contends that the State failed to prove him guilty of sexual criminal assault beyond a reasonable doubt.  In making his argument, the defendant does not dispute that he and F.V. engaged in sexual intercourse.  Rather, he asserts that the evidence was insufficient to show that the sexual intercourse took place by force and against F.V.'s will because there was no physical evidence to corroborate her testimony.  The defendant further asserts that F.V. was not a credible witness because she had an incentive to falsify her testimony.

A conviction will not be set aside for insufficient evidence unless the evidence is so improbable or unsatisfactory as to give rise to a reasonable doubt of guilt.  
People v. Taylor
, 186 Ill. 2d 439, 445, 712 N.E.2d 326 (1999).  In considering a defendant's challenge to the sufficiency of the evidence, the relevant question is whether, after viewing all of the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt.  
People v. Brooks
, 187 Ill. 2d 91, 132, 718 N.E.2d 88 (1999).  The determinations as to the weight to be given to the testimony of the witnesses, their credibility, and the reasonable inferences to be drawn from the evidence are matters within the province of the trier of fact.  
People v. Cooper
, 194 Ill. 2d 419, 431, 743 N.E.2d 32 (2000).

Pursuant to section 12-13(a)(1) of the Criminal Code of 1961 (720 ILCS 5/12-13(a)(1) (West 2000)), a person commits criminal sexual assault when he "commits an act of sexual penetration by the use of force or threat of force".  There is no definite standard setting the amount of force needed to show that the parties engaged in nonconsensual intercourse, and each case must be considered on its own facts.  
People v. Thomas
, 96 Ill. App. 3d 443, 450, 421 N.E.2d 357 (1981).     

Although the defendant cites the proper standard of review for this claim, he relies on 
People v. Bruno
, 110 Ill. App. 2d 219, 249 N.E.2d 252 (1969), in arguing that there was insufficient physical evidence to corroborate F.V.’s testimony.  In 
Bruno
, the court reversed the defendant's convictions for rape and deviate sexual assault based on the fact that there was no medical or physical evidence corroborating the victim's claim that the defendant threw her down on the couch, choked her, and then forced his way to have sexual intercourse with her.  
Bruno
, 110 Ill. App. 2d at 222.  However, this court subsequently held in 
People v. Hermosillo
, 256 Ill. App. 3d 1020, 628 N.E.2d 413 (1993), that there is no longer a requirement that a victim's testimony be corroborated by physical or medical evidence in order to sustain a conviction for criminal sexual assault.   As the court explained in 
People v. Roy
, 201 Ill. App. 3d 166, 185, 558 N.E.2d 1208 (1990), "The testimony of no other category of crime victim is held to be automatically suspect or to require additional proof beyond the statutory requirements. The time has passed to rid the law of this sexist anachronism."
  As a consequence, we reject the defendant's reliance on 
Bruno
.

Here, F.V. testified that the defendant grabbed her by the hair and pushed her into an office.  She further stated that the defendant pinned her up against the wall and that she tried to get away.  According to F.V., the defendant tore her bra as the two of them struggled.  F.V. further stated that the defendant pushed her, threw her onto the floor, and had sexual intercourse with her.  Riggins testified that F.V. showed him a bruise on her breast.  The trial court, as the trier of fact, chose to believe F.V.'s testimony, specifically finding it to be clear, unequivocal, and unimpeached in any significant way.  Based on the evidence, we conclude that a rational trier of fact could have found that the sexual intercourse took place by force and against F.V.'s will.  See 
People v. Morrow
, 104 Ill. App. 3d 995, 433 N.E.2d 985 (1982) (unequivocal testimony of complainants was sufficient to sustain conviction in rape prosecution, even without physical evidence to corroborate their assertion with respect to the defendant's use of force).    

The defendant further argues that F.V. was not a credible witness because she had an incentive to falsely accuse the defendant.  He points to the fact that, when F.V. saw Zandecki after the incident, she immediately asked him if he was going to fire her and then told him what had happened.  The defendant further asserts that there was evidence that F.V. was a substandard employee who was at risk of losing her job.  The defendant's argument in this regard, however, again involves a matter for the trial court to consider in evaluating the credibility of the witnesses.  See 
People v. Bowen
, 241 Ill. App. 3d 608, 620, 609 N.E.2d 346 (1993).  The trial court in this case found F.V.'s testimony to be credible and "without motivation."  Accordingly, we reject the defendant's credibility argument in this respect.    

Viewing the evidence in the light most favorable to the prosecution, we conclude that the defendant was convicted beyond a reasonable doubt of criminal sexual assault.    

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed. 

HALL and KARNEZIS, JJ., concur.