2024 IL App (2d) 230264-U
No. 2-23-0264
Order filed July 30, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 20-CF-1141 |
| ALBERTO VAZQUEZ, | ) ) ) | Honorable David P. Kliment, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE KENNEDY delivered the judgment of the court.
Justices Hutchinson and Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*:   (1) The trial court did not commit plain error in admitting out-of-court statements by the child victim that the defendant touched her sexually; under the governing statute, such statements are admissible despite being prior consistent statements and cumulative. (2) Defendant was proved guilty of aggravated criminal sexual abuse; his challenges were based on witness credibility and conflicts in the testimony, but those matters were for the fact finder to resolve.

¶ 2    After a jury trial, defendant, Alberto Vazquez, was convicted of two counts of aggravated criminal sexual abuse (720 ILCS 5/11-1.60(c)(1)(i) (West 2018)) and sentenced to 30 months' probation. On appeal, he contends that (1) the trial court abused its discretion in admitting multiple

prior consistent statements by the alleged victim and (2) he was not proved guilty beyond a reasonable doubt. We affirm.

¶ 3                                         I. BACKGROUND

¶ 4     Defendant was tried on two counts of aggravated criminal sexual abuse, which alleged that when K.A., his stepdaughter, was under 13 years old, he touched her breast (count III) and her buttocks (count IV) for the purpose of his sexual gratification. Before trial, the State moved, per section 115-10 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-10 (West 2018)), to introduce K.A.'s statements to (1) Chris Tunney of the Kane County Child Advocacy Center (Center); (2) K.A.'s mother, N.A.; (3) K.A.'s stepmother, Esther J.; and (4) Esther's daughter, J.J. Defendant did not object to the statements to Tunney and J.J. However, he contended that, based on their time, content, and circumstances, the statements to N.A. and Esther lacked sufficient safeguards of reliability to be admitted (see *id.* § 115-10(a)(1)). The trial court ruled that all the proffered statements were admissible.

¶ 5     At trial, K.A. testified as follows. She was born on February 21, 2009, and resided in Aurora with her younger sister, C.L., and N.A. Defendant had resided at the home for about two years, including June 9 and 10, 2020.

¶ 6     K.A. testified that, on the evening of June 9, 2020, she, N.A., and C.L. all went to bed in N.A.'s and defendant's bedroom (he was not then in the room). Early on the morning of June 10, 2020, N.A. left to go to work. Shortly afterward, while K.A. was half asleep, she saw defendant pull down C.L.'s shirt. K.A. fell asleep but then felt defendant touch her breast under her clothing. His hand was moving as he touched her. He stopped when K.A. pushed his hand away. Defendant then touched her buttocks under her clothing. She did not recall whether his hand was moving as he did so. K.A. said she was half asleep when defendant touched her breast and butt.

¶ 7    K.A. testified on cross-examination that she resided with her father, Octavio L., while in fourth grade. At that time, N.A. was married to Octavio. After N.A. married defendant, N.A. and her two daughters moved into the Aurora residence with defendant. Octavio resided with J.J. and Esther. C.L. visited Octavio every Sunday, and K.A. always accompanied her there.

¶ 8    K.A. testified that, a couple of days after June 10, 2020, K.A. and C.L. visited Octavio's house. In the interim, nothing unusual happened at the Aurora home.

¶ 9    Esther testified as follows. In June 2020, she resided in Aurora with her parents, J.J., and Octavio. K.A. and C.L. visited every weekend; one visit occurred a few days after June 10, 2020. On that day, Esther, Octavio, and J.J. were home. While K.A. was playing with C.L. and J.J., she pulled away and seemed upset, which was abnormal for her. K.A. approached Esther and asked to talk to her. Esther asked her to wait. Shortly afterward, between noon and 1 p.m., K.A. and Esther spoke privately. K.A. told Esther that, on June 10, defendant touched her, "first *** underneath her bra, underneath her shirt." He was "just rubbing." K.A. said that she pushed defendant's hand away and told him to stop. Defendant then put his hand "underneath *** her panties and was rubbing on her rear." K.A. pushed him, removed his hand from her, and walked away. Esther told K.A. that they would have to tell N.A.

¶ 10    On cross-examination, Esther testified that she did not know N.A. very well and had no relationship with defendant. Sometime before June 10, 2020, Esther told K.A. that, if anyone ever touched her or made her feel uncomfortable, she could come to her and tell her. During her visit, K.A. told Esther that she was half asleep when defendant first touched her but was awake when he touched her again. On the evening that K.A. made this accusation, K.A. called N.A. and handed Esther the phone. As Esther spoke with N.A., K.A. was in the room, and J.J. was asleep.

¶ 11    J.J. testified that K.A. was her stepsister and visited her on Sundays. In June 2020, K.A. came over and talked with J.J. Asked whether she remembered what the conversation was about, J.J. testified, "No." Asked whether K.A. said anything "that made her [K.A.] uncomfortable," J.J. testified, "No." Asked whether K.A. told her about anything that had happened a few days earlier, J.J. testified, "I think so," but that she did not remember "a lot of it." Asked what she did remember, J.J. testified that she talked with K.A. "towards the middle of the night." K.A. said that defendant had touched her "[o]n her breast and on her bottom." According to J.J., K.A. "seemed upset" when she gave this information.

¶ 12    J.J. testified on cross-examination that she did not remember what she did after K.A. told her about the incident with defendant. K.A. told her that, when defendant touched her, she was "asleep with [N.A.] and [C.L.] beside her."

¶ 13    N.A. testified as follows. Around June 15, 2020, Esther called and spoke to her, after which K.A. spoke to her. K.A. said that, on the morning of June 10, while N.A. was at work, defendant put his hand underneath K.A.'s shirt and inside her shorts. The next day, in a private conversation, K.A. indicated that defendant rubbed her breast. K.A. related further that she "felt his hand *** going underneath her shirt, and that she swept his hand away and said stop." She went back to sleep but then felt his hand touching her butt inside her shorts. She pushed his hand away, told him to stop, and left the room. N.A. testified that K.A. "didn't really have a relationship" with defendant and "would never permit a relationship to be established."

¶ 14    On cross-examination, N.A. testified that, before June 10, 2020, K.A. and defendant did not have "a parent-and-daughter relationship. If he tried to get along with her, she would pretty much push him away." N.A. had a poor relationship with Octavio, her ex-husband. C.L. visited Octavio every Sunday, and K.A. always went with C.L. on the visits. Octavio and K.A. had "a

father-and-daughter relationship." Before June 10, 2020, Esther had not interacted with N.A. or defendant. Octavio and defendant did not get along.

¶ 15    N.A. testified that she left for work on June 10, 2020 at about 5:30 a.m. By then, defendant had arrived home. The night of June 9, 2020, was not the first time that K.A. and C.L. slept in N.A.'s bedroom with her. However, as best she could recall, June 10 was the first time that defendant entered the room and slept in the bed while N.A.'s daughters were there. When N.A. returned home at about 5 p.m. on June 10, defendant, K.A., and C.L. were there. N.A. saw nothing unusual about their demeanor. Over the next two days, when K.A. returned from work at 5 p.m., she noticed nothing unusual about the demeanor or actions of defendant, K.A., or C.L.

¶ 16    N.A. testified further on cross-examination that, on June 10, 2020, K.A. called her and asked permission to go out to eat with J.J., Esther, and Octavio for J.J.'s birthday. N.A. told her no. K.A. was upset.

¶ 17    N.A. also indicated that, during one of their conversations in which K.A. described defendant's improper touching, K.A. said that "she was in between half asleep, half awake" during the incident. K.A. said that she fell back asleep after she felt defendant's hand go inside her shirt. She was half asleep when she felt defendant's hand on her butt; she then got up and went to her room with C.L. "When [they] spoke on the phone," N.A. asked K.A. why she had not told her sooner about the incident. K.A. responded that she had been afraid that N.A. would get angry at her because defendant was N.A.'s husband.

¶ 18    N.A. testified that, about two weeks after June 10, 2020—after defendant "had left the house"—K.A. asked N.A. whether Octavio could move in with them. Aside from this, K.A. had never suggested that she wanted N.A. and Octavio to get back together.

¶ 19    On redirect, N.A. testified that Octavio did not move back in with her and that, since June 10, 2020, nothing had changed with the visitation schedule.

¶ 20    Tunney testified as follows. On June 23, 2020, she interviewed K.A. at the Center. The interview was video recorded and played to the jury. In the interview, K.A. related the following sequence of events on the morning of June 10, 2020. First, she saw defendant put his hand inside C.L.'s shirt. K.A. fell asleep, but shortly afterward she felt defendant put his hand inside her shirt. She pushed his hand away, but a short time later, he started touching her breast. She pushed his hand away. Defendant then put his hand inside K.A.'s pants. At that time, K.A. and C.L. left the room.

¶ 21    Upon further questioning, K.A. indicated to Tunney that, when defendant put his hand under her shirt, he touched her breast and rubbed it. K.A. scooted over, but as she lay on her back, defendant put his hand inside her underwear and touched her butt and rubbed it. K.A. pushed his hand away, got up, and left. C.L. left also, and they went to their own rooms. Defendant did not say anything. Although K.A. had her eyes closed when defendant first touched her, she "peek[ed] *** a little bit."

¶ 22    K.A. told Tunney that she did not talk to C.L. about the incident but did tell Esther shortly after June 10, 2020. She and Esther then called N.A. and told her what they had just discussed.

¶ 23    K.A. told Tunney that, before June 10, 2020, defendant had not touched her private parts. N.A. told K.A. that defendant had claimed that the touching accidentally occurred when he pulled the covers over K.A. and C.L. K.A., however, believed that he touched her on purpose. Asked to clarify where and how many times defendant touched her, K.A. answered that defendant touched her first on her stomach, then on her breast, and finally on her butt.

¶ 24    On cross-examination, Tunney testified that K.A. never said that she told J.J. about the incident.

¶ 25    The State rested. The parties stipulated that C.L. would testify as follows if called as a witness. She was born on May 16, 2011, and defendant was her stepfather. By June 10, 2020, she had resided with defendant, N.A., and K.A. for about a year and a half. On the morning of June 10, 2020, she and K.A. were sleeping in N.A. and defendant's bedroom. C.L. did not remember anything out of the ordinary happening that morning. K.A. did not wake her up to go to another room to sleep. She did not notice anything out of the ordinary about K.A. between June 10 and 12, 2020. Defendant never touched C.L. inappropriately. She had a good relationship with defendant and referred to him as her stepdad.

¶ 26    The jury convicted defendant of both counts. He moved for a new trial. He contended that the trial court erred in admitting statements under section 115-10 of the Code "without a full evidentiary hearing to determine time, content, and circumstances of the statements. *** [S]uch evidence was cumulative and prejudicial." The trial court denied the motion and later sentenced defendant to 30 months' probation. He timely appealed.

¶ 27                                    II. ANALYSIS

¶ 28    On appeal, defendant contends first that the trial court erred in admitting K.A.'s statements to Esther and N.A. about the incidents at issue. Defendant does not contend that these statements failed to meet the reliability criteria of section 115-10 of the Code (see 725 ILCS 5/115-10(b)(1) (West 2018)). Rather, he argues that the statements were inadmissible because they were (1) prior consistent statements that improperly risked persuading the jury that K.A.'s testimony was credible because she had previously made those allegations to several individuals and (2) cumulative and unduly prejudicial.

¶ 29    Section 115-10 provides that, in a prosecution for a physical or sexual act against a child under the age of 13, an out-of-court statement from the victim relating to the offense "shall be admitted as an exception to the hearsay rule" if, *inter alia*, "the time, content, and circumstances of the statement provide sufficient safeguards of reliability[.]" *Id.* § 115-10(a), (b)(1).

¶ 30    The State argues that (1) defendant has forfeited this issue by failing to object below on the specific grounds he raises on appeal and, alternatively, (2) as a general matter, statements properly admitted under section 115-10 are not barred as prior consistent statements or as cumulative. We agree with the State that defendant has forfeited the issue.

¶ 31    "Generally, '[t]o preserve an issue for appeal, the defendant must have raised the issue in a motion *in limine* or an objection at trial and also in a posttrial motion.' " *People v. Korzenewski*, 2012 IL App (4th) 101026, ¶ 7 (quoting *People v. Brown*, 319 Ill. App. 3d 89, 96 (2001)). Also, a party must make specific objections to evidence, based on particular grounds, and the failure to do so forfeits objections on all other grounds not specified or relied on. *Piser v. State Farm Mutual Automobile Insurance Co.*, 405 Ill. App. 3d 341, 350 (2010); see *People v. Scott*, 2019 IL App (1st) 163022, ¶ 15. Before trial, defendant sought to bar K.A.'s statements to N.A. and Esther solely because they lacked the statutory indicia of reliability. See 725 ILCS 5/115-10(b)(1) (West 2018). Defendant relied on the content and context of the statements and did not contend that they were impermissible prior consistent statements or that they were cumulative. In his posttrial motion, defendant again argued that the statements lacked sufficient reliability safeguards. He added that the statements were "cumulative and prejudicial." However, he did not preserve these particular grounds for objection because he did not raise them in his motion *in limine* or at trial. Thus, defendant has forfeited his argument that K.A.'s statements to Esther and N.A. are improper prior consistent statements and also cumulative.

¶ 32    Defendant contends that we should consider the issue as plain error. The plain error rule is a limited exception to forfeiture. *People v. Platkowski*, 225 Ill. 2d 551, 564 (2007). To establish plain error, a defendant must show that (1) a "clear or obvious error occurred" and (2) either (a) the evidence was so closely balanced that the error threatened to tip the scales of justice against the defendant, regardless of how serious it was, or (b) the error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *Id.* at 565.

¶ 33    Defendant cannot meet this test, because he cannot show that the trial court committed a clear or obvious error. As defendant himself acknowledges, the appellate court has long and uniformly held that, regardless of other evidentiary rules, section 115-10 authorizes the admission of prior consistent statements by a young child who was allegedly the victim of an offense based on a sexual or physical act against her. See *People v. Applewhite*, 2016 IL App (4th) 140558, ¶¶ 63-66; *People v. Stull*, 2014 IL App (4th) 120704, ¶¶ 93-101; *People v. Lofton*, 303 Ill. App. 3d 501, 508 (1999). The fact that such statements are cumulative is not a basis for excluding them. See, *e.g.*, *Applewhite*, 2016 IL App (4th) 140558, ¶¶ 73-74. The trial court was bound by the holdings of the appellate court. See *People v. Carpenter*, 228 Ill. 2d 250, 259 (2008). The court did not commit a clear or obvious error—or any error—by doing what the law required. Indeed, to rule *sua sponte* in defiance of binding authority would have been a clear error. Therefore, we hold that defendant has forfeited his first claim of error.

¶ 34    We turn to defendant's second claim: that he was not proved guilty beyond a reasonable doubt of either offense. Defendant argues that (1) K.A.'s testimony and out-of-court statements were not corroborated by physical or other evidence, (2) C.L.'s stipulated testimony contradicted K.A., and (3) K.A. had a motive to testify falsely because she had a poor relationship with

defendant. The State responds that K.A.'s testimony and statements were sufficient to prove guilt beyond a reasonable doubt and defendant raises no more than credibility issues that the jury properly resolved against him. For the following reasons, we agree with the State.

¶ 35    In assessing the sufficiency of the evidence, we ask only whether, after viewing the evidence in the light most favorable to the prosecution, any reasonable fact finder could have found the essential elements of the charged offense beyond a reasonable doubt. *People v. Hopkins*, 201 Ill. 2d 26, 40 (2002). The credibility of the witnesses and the weight to be given to the evidence are within the prerogative of the fact finder. *People v. Holmes*, 141 Ill. 2d 204, 242 (1990). We must allow all reasonable inferences from the evidence in favor of the prosecution. *People v. Baskerville*, 2012 IL 111056, ¶ 31.

¶ 36    It is settled law that "the testimony of a single witness, if positive and credible, is sufficient to convict, even if contradicted by the defendant." *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). In prosecutions for sexual offenses, corroboration by physical or medical evidence is not necessary. *People v. Le*, 346 Ill. App. 3d 41, 50 (2004). When the complaining witness relates one version of events and the defense witnesses relate a completely different picture, this merely presents a credibility issue for the fact finder to resolve. *Siguenza-Brito*, 235 Ill. 2d at 229.

¶ 37    Defendant's reasonable-doubt claim fails. K.A. testified clearly that defendant touched her breast under her clothing and then touched her buttocks under her clothing. Her testimony was consistent with her statements to Tunney and J.J., and defendant conceded below that those statements were admissible. Her testimony was also consistent with her statements to N.A. and Esther, the admissibility of which defendant has forfeited as an issue on appeal, as we have explained. The jury was entitled to credit K.A.'s testimony and out-of-court statements, which were positive, straightforward, and generally consistent.

¶ 38    Defendant asserts that "K.A.'s credibility was *** cast into doubt by the fact that she maintained that she was 'half asleep' when the touching allegedly occurred." Aside from being a non sequitur, this argument simply asks us to redetermine witness credibility, which is not our prerogative.

¶ 39    Similarly, that C.L.'s testimony was inconsistent with the State's evidence merely raised a credibility issue for the jury. "A reviewing court will not reverse a conviction simply because the evidence is contradictory." *Siguenza-Brito*, 235 Ill. 2d at 228. Finally, the evidence that K.A. and defendant did not get along *permitted* but did not *require* an inference of bias on K.A.'s part, much less raise a reasonable doubt of defendant's guilt. Again, we decline defendant's invitation to usurp the jury's role.

¶ 40    We hold that defendant was proved guilty beyond a reasonable doubt of both offenses. Therefore, we affirm his convictions.

¶ 41                                III. CONCLUSION

¶ 42    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 43    Affirmed.